1

Honorable James L. Robart

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT FOR THE

9

WESTERN DISTRICT OF WASHINGTON

10

)

11

UNITED STATES OF AMERICA

)

)

12

Plaintiff,

)

)

13

v.

)

Civil Action

)

14

CITY OF RENTON

)

No. 2:11-cv-01156-JLR

15

Renton City Hall,

)

1055 S. Grady Way

)

16

Renton, WA  98057,

)

)

17

and

)

)

18

CITY OF VANCOUVER

)

19

210 East 13th Street

)

Vancouver, WA  98688

)

20

)

21

Defendants.

)

)

22

23

**UNITED STATES' MEMORANDUM IN OPPOSITION**

**TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

24

25

26

27

28

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR)

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

1

**TABLE OF CONTENTS**

2

INTRODUCTION………………………………………………………...……..…1

3

4

BACKGROUND FACTS…………………………………………………...……..4

5

ARGUMENT…………………………………...……………………………..…..7

6

7
    I.    To prevail, the Cities must show a clear and unambiguous
          waiver of sovereign immunity for local government
          stormwater charges………………………...……………………...………….…….7

8

9
    II.    The Cities' waiver argument does not survive the
          Supreme Court's strict construction rule, including its

10
          strict construction of CWA section 313………………………...……………9

11
          A.  Prior to 2011, CWA section 313 did not express an

12
              unambiguous waiver of sovereign immunity that
              extended to stormwater charges……………………………….......9

13

14
          B.  The CWA 2011 Amendment demonstrates unequivocal
              language………...……………………………………………………..13

15

16
          C.  Until its 2011 amendment, CWA section 313 contrasted
              with other federal environmental statutes' unambiguous

17
              waivers for specified local governmental environmental
              costs…………………………………………………………………..14

18

19
    III.    The 2011 amendment is not retroactive……………………………….…...17

20
          A.  The Cities and Amici contradict themselves…………………….…...17

21

22
          B.  The Cities' retroactivity argument fails under the
              Supreme Court's strict construction rule…………………….……...18

23

24
    IV.    The Cities assume they satisfy the 2011 amendment's
          definition of "reasonable service charges"………….……………………22

25

CONCLUSION…………………………………………….……………...……..23

26

27

28

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1

## TABLE OF AUTHORITIES

2

*Beverly Community Hospital v. Belshe*, 132 F.3d 1259 (9th Cir. 1997) .......................... 17, 18

3

*Brown v. Sec'y of the Army*,   78 F.3d 645 (D.C. Cir. 1996), *cert denied*,
   519 U.S. 1040 (1997) ........................................................................................... 9, 18

4

5

*Consumer Product Safety Committee v. GTE Sylvania, Inc.*,
   447 U.S. 102 (1980) ............................................................................................... 20

6

7

*Dept'f of the Army v. Blue Fox*, 525 U.S. 255 (1999) ............................................... 7

8

*Fishing Co. of Alaska v. United States*, 195 F. Supp. 2d 1239
   (W.D. Wash. (2002) ............................................................................................... 18

9

10

*Francis v. United States*, 1998 WL 211968 (9th Cir. 1998).................................... 21

11

*Garcia v. United States*, 469 U.S. 70 (1984) ......................................................... 20

12

*Garrido-Morato v. Gonzalez*,  485 F.3d 319 (5th Cir. 2007).................................. 19

13

*Humetrix v. Gemplus*, 268 F.3d 910 (9th Cir. 2001) ............................................. 19

14

*E.P.A. v. California*, 426 U.S. 200 (1976) .......................................................passim

15

16

*Lane v. Pena*, 518 U.S. 187 (1996) .................................................................. 10, 19

17

*Levin v. United States*, 663 F.3d 1059 (9th Cir. 2011) ...................................... 7, 21

18

*Library of Congress v. Shaw*, 478 U.S. 310 (1986) ................................................ 21

19

20

*In re Lorber Industries of California*,  675 F.2d 1062 (9th Cir. 1982)............... 6, 12

21

*Massachusetts v. United States*, 435 U.S. 444 (1978) .......................................... 13

22

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819)................... 7

23

*Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010)....................................................... 9

24

25

*National Cable Television Ass'n v. United States*, 415 U.S. 336 (1974) ................. 8

26

*Novato Fire Protection District v. United States*,
   181 F.3d 1135 (9th Cir. 1999)............................................................................... 7

27

28

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page iii

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990) ........................................ 7

*Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2008) ................................. 19

*Papageorgiou v. Gonzales*, 413 F.3d 356 (3d Cir. 2005) ........................................ 19

*Piamba Cortes v. American Airlines*, 177 F.3d 1272 (11th Cir. 1999) ................................. 18

*Rank v. United States*, 345 F.2d 337 (5th Cir. 1965) ........................................ 19

*Rosemere Neighborhood Association v. City of Vancouver*,
2005 WL 2656995 (W.D. Wash. 2005) ........................................ 5

*South Carolina v. Baker*, 485 U.S. 505 (1988) ........................................ 8

*Trout v. Sec'y of Navy*, 317 F.3d 286 (D.C. Cir. 2003) ........................................ 18

*United States Dep't of Energy v. Ohio*, 503 U.S. 607 (1992) ........................................ passim

*United States v. Carrillo*, 991 F.2d 590 (9th Cir. 1994) ........................................ 18

*United States v. City of Columbia, MO*, 914 F.2d 151 (8th Cir. 1990) ........................................ 13

*United States v. City of Huntington, WV*, 999 F.2d 71 (4th Cir. 1993) ........................................ 7, 13

*United States v. Matson Nav. Co. ("The Louie III")*,
201 F.2d 610 (9th Cir. 1953) ........................................ 19

*United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992) ........................................ passim

*United States v. Quinn*, 18 F.3d 1461 (9th Cir. 1994) ........................................ 18

*United States v. Sanders*, 67 F.3d 855 (9th Cir. 1995) ........................................ 18

*Velero Terrestrial Corporation v. Caffrey*, 205 F.3d 130 (4th Cir. 2000) ........................................ 8

*Western Watersheds v. Interior Board of Land Appeals*,
624 F.3d 983 (9th Cir. 2010) ........................................ 9

United States' Opposition to Defendants' Motion for Partial Summary Judgment (No. 2:11-cv-01156-JLR) – Page iv

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

# STATUTES, PUBLIC LAWS & BILLS

33 U.S.C. § 1323 ...................................................................................................... passim

42 U.S.C. § 300j-6 .......................................................................................................... 15

42 U.S.C. § 6961 ..................................................................................................... 14, 15

42 U.S.C. § 7418 ............................................................................................................ 15

P.L. 85-866, § 1(c)(1), 72 Stat. 1606 (September 2, 1958).................................. 19

P.L. 94-580, 90 Stat. 2795 (October 1, 1976) ........................................................ 14

P.L. 101-549, § 101(e), 104 Stat. 2399 (November 15, 1990) ............................ 16

P.L. 102-386, § 102, 106 Stat. 1505 (October 6, 1992) .................................. 12, 15

P.L. 104-182, Title I, § 129, 110 Stat. 1660 (August 6, 1996) ............................ 15

P.L. 111-378, § 1, 124 Stat. 4128 (January 4, 2011)....................................... passim

1993 H.R. 340, § 2, 103rd Cong., 2d Sess. (1993) ............................................... 16

1995 H.R. 961, § 316, 104th Cong., 1st Sess. (1995).......................................... 16

1999 S. 669, § 2, 106th Cong., 1st Sess. (1999) .................................................... 16

# MISCELLANEOUS

Comp. Gen., Dec. B-306666, Matter of Forest Service - Surface Water
    Management Fees (June 5, 2006); 2006 WL 1550189 (Comp. Gen.),
    2006 U.S. Comp. Gen. LEXIS 93……………………………………......……….......…..6, 12

Office of Legal Counsel, Reimbursement or payment obligation of the federal
government under section 313(c)(2)(B) of the Clean Water Act (February 25, 2011),
    2011 WL 1085035 (O.L.C.), 2011 OLC LEXIS 9……………...……………….…….21

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page v

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1

## INTRODUCTION

2

3       The Cities of Renton and Vancouver are seeking to compel payments from the

4  United States.  In particular, both Cities seek to impose charges for separate

5  stormwater sewer systems that were imposed before 2011. (The parties agree that

6  amendments to the Clean Water Act ("CWA") effective in 2011 constitute a limited

7  waiver for federal agencies to pay the charges now.)  The United States filed this suit,

8
   and count I contends that these stormwater charges are taxes for which there is no
9
   waiver of sovereign immunity.  Each City responded by denying the charges are taxes,
10
11  and asserting an affirmative defense claiming that before 2011 the CWA contained a

12  waiver of sovereign immunity requiring federal agencies to pay the stormwater

13  charges.[1]  Each City has filed a motion for partial summary judgment on their

14  affirmative defense, arguing that the CWA has a waiver of immunity that applies to

15
   their stormwater charges.  Therefore, the Cities' motion for partial summary judgment
16
   necessarily assumes for purposes of the motion that the stormwater charges are a tax,
17
18  or at least require a waiver of sovereign immunity, and contend such a waiver existed

19  before 2011.

20
        Thus, federal sovereign immunity is at issue.  The Supreme Court's strict
21
22  construction rule that controls claims of waiver of sovereign immunity requires that

23  only waivers that are unambiguously stated in the statutory text itself will suffice.

24  Thus the Cities must present **statutory text that itself unambiguously waives**

25

26  ───────────────

27  [1] See *City of Renton's Answer* at ¶¶34 & 35 (Docket 9, at pp. 7-8); *City of Vancouver's*
   *Answer* at ¶¶ 34 & 35 (Docket 10 at pp. 9-10).
28

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR)

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1

2

**sovereign immunity for their municipal stormwater charges**.  The Cities cannot meet this strict standard.

3

4

The Cities argue that sovereign immunity was waived by Congress's 1977

5

amendment to the Clean Water Act's federal facilities provision, a provision that

6

includes a reference to "reasonable service charges."  But "reasonable service charges,"

7

although necessarily limited by the structure of the federal facilities provision, was not

8

9

specifically defined by Congress when it originally enacted that provision in 1972.

10

And, in the 1976 opinion of *E.P.A. v. California,* 426 U.S. 200 (1976), the Supreme Court

11

found that "reasonable service charges" plausibly referred to charges for a service

12

provided by a locality, and not every charge imposed by the taxing authority.

13

14

Moreover, Congress did not provide any specific definition for that three-word term in

15

the 1977 amendment.  This plausible meaning for "reasonable service charge" that

16

excludes a tax imposed on all land owners necessarily means that the Cities cannot

17

18

point to statutory text unambiguously stating either (1) that stormwater charges

19

specifically qualify as "reasonable service charges," or (2) expressly waiving immunity

20

for a broader category of local government water pollution costs, as Congress did with

21

22

respect to certain other local government pollution costs under other federal

23

environmental statutes (see below, pp. 14-16).  In short, the Cities' argument regarding

24

the 1977 amendment assumes what it must prove.

25

Because there is no statutory text in the 1977 amendment that unambiguously

26

waives immunity for the Cities' municipal stormwater charges, the Cities resort to

27

28

inferences from other clauses of the federal facilities provision or certain legislative

8244069.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

history to conclude that their charges must so qualify.  But the Supreme Court has **twice** rejected such inferential claims of waiver under the federal facilities provision. In addition to *E.P.A. v. California,* and after the 1977 amendment, the Supreme Court again rejected inferential claims of waiver in *D.O.E. v. State of Ohio,* 503 U.S. 607 (1992). The Cities' similar inferential claim of waiver does not survive the Supreme Court's strict construction rule.

Equally clear evidence rejecting the Cities' argument regarding the 1977 amendment appears in Congress' later 2011 amendment.  That 2011 amendment expends no fewer than 120 words stating, not only that stormwater charges may qualify as "reasonable service charges," but also then defining exactly which stormwater charges so qualify.  Where no statutory text had previously unambiguously stated that municipal stormwater charges qualify as reasonable service charges, after the 2011 amendment that express and unambiguous statutory text springs forth in precise detail.

The Cities' argument that the 2011 amendment waives sovereign immunity retroactively likewise falls before the Supreme Court's strict construction rule. Because sovereign immunity is again at stake, the Cities again must identify express statutory text stating that the 2011 amendment has retroactive effect.  But there is no explicit statutory statement of retroactivity.  Under the Supreme Court's strict construction rule, that again terminates the analysis in the United State's favor.  The Court should deny the Cities' motion for partial summary judgment.

United States' Opposition to Defendants' Motion for Partial Summary Judgment (No. 2:11-cv-01156-JLR) – Page 3

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1

## BACKGROUND FACTS

2

3        Bonneville Power Administration ("BPA") is a federal nonprofit agency that is

4

part of the United States Department of Energy.  BPA supplies electric power used in

5

the Northwest and has facilities in both the City of Vancouver and in the City of

6

Renton.

7        The Clean Water Act ("CWA") was enacted in 1972.[2]  As originally enacted in

8

9

1972, CWA section 313 (its "federal facilities" provision) waived federal sovereign

10

immunity against certain State and local government requirements, including a waiver

11

for "reasonable service charges."  CWA § 313(a); 33 U.S.C. § 1323 (1972); *see E.P.A. v.*

12

*California,* 426 U.S. at 211-12.  Congress amended the CWA's federal facilities provision

13

in 1977, but that amendment did not specifically define what qualified as "reasonable

14

15

service charges" for which federal sovereign immunity was waived.

16        Neither City's municipal separate storm sewer system ("MS4") was yet in

17

existence when CWA was enacted in 1972, or when it was amended in 1977.  Renton

18

19

and Vancouver say they "have respectively operated municipal separate storm sewer

20

systems since 1987 and 1995."  (Cities Mtn., p. 3).[3]  They further say that their MS4s

21

22    _____

[2] In 1972 Congress enacted the Federal Water Pollution Control Act.  P.L 92-500, 86

23

Stat. 816 (October 18, 1972).  It has been known as the Clean Water Act since the 1977

24

amendments.

25    [3] Stormwater runoff from downtown core areas, industrial facilities, construction sites, and residential areas is a source of significant water pollution.  Developed urban areas

26

with a high degree of impervious surfaces, e.g., city streets, parking lots, roofs, drive ways, etc., may generate water pollution when storm runoff carries pollutants into the

27

city's stormwater system.  The runoff is then transported through the city's

28

stormwater system and often discharged into local waterways without treatment.

Judgment (No. 2:11-cv-01156-JLR) – Page 4

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1   "comply with the National Pollution Discharge Elimination System ('NPDES')

2   requirements" and that they have received permits to operate their MS4s, *id.*,

3   apparently rather recently.[4]

4

5       The Cities assess all properties with impervious surfaces with a monthly

6   stormwater charge.  *E.g.*, VMC § 14.09.060(B) (all single family homes charged same

7   rate).  The Cities say that their stormwater rates "are based upon [each property's]

8   square footage of impervious surface" and that "Defendants' rates are uniform for

9   each class of users."  (Cities Mtn., p. 4).  But the Cities' respective stormwater rate

10  structures are far from equivalent.[5]  Neither Vancouver nor Renton has introduced

11  record evidence that its rate structure yields a charge that is fair approximation of

12  various properties' contribution to stormwater pollution.  Each of the Cities facially

13  discriminates in its own favor, with Vancouver giving its own substantial impervious

14  street acreage a 70% rate discount.  VMC § 14.09.060(B), (C) & (E); RMC § 8-2-3(E)(1)(g)

15  & (i).

16

17  _____

18  [4] *Rosemere Neighborhood Ass'n v. City of Vancouver,* 2005 WL 2656995 at *5 (W.D. Wash.
    2005) (stating that Vancouver did not have a permit as of late 2005).

19  [5] Vancouver apparently charges all multi-family, commercial, and industrial properties
    at a uniform rate per measured impervious surface.  It appears to charge property
    owners at a rate of $7.10 per 2,500 sq. ft. of impervious surface per month.  VMC §
    14.09.060(B).  Unlike Vancouver's uniform rate structure, properties subject to
    Renton's charges are grouped into three very rough categories of "intensity" of
    development.  RMC § 8-2-3(E)(1).  For example, commercial and industrial properties
    with anywhere from 0% to 50% impervious surface ("low intensity") are all charged
    the same rate.  RMC § 8-2-3(A).  "Medium" (51% to 80% impervious surfaces) and
    "high" (81% to 100% impervious surfaces) intensity aggregate rate categories exist as
    well.  *Id.*

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 5

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Cities do not explain what municipal activities and costs are funded by their stormwater charges. The charges appear to pay for myriad municipal activities including street sweeping, tree planting, public education, and minimizing stormwater pollution from the Cities' own operations. Declaration of Joseph Hunsader, ¶¶4-9 & Exs. A, B. The City of Vancouver's stormwater charges further include the burden of a separate City "tax" in the amount of 20% "of the gross receipts collected from discharges into the City's surface water drainage system." VMC § 5.93.010. The Cities' Motion does not disclose what **other** general municipal functions are paid for by that separate, but included, 20% Vancouver tax.

Although these municipal activites may redound to the benefit to the general community, they do not qualify as "services" to BPA.[6] Nor has BPA requested that the Cities provide any stormwater "services." Declaration of Thomas Rhoads, ¶¶4-7; Declaration of Angus Campbell, ¶¶4-7.

Congress again amended CWA section 313 on January 4, 2011. As explained below, that amendment unambiguously waives federal facilities' sovereign immunity for certain specifically defined municipal stormwater charges. P.L. 111-378, § 1, 124 Stat. 4128 (January 4, 2011); 33 U.S.C. § 1323 (2011). The 2011 amendment does not

---

[6] *E.g.*, Comp. Gen. Dec. B-306666, Matter of Forest Service – Surface Water Management Fees, 2006 WL 1550189 at *5 (county's stormwater charges that funded "basin planning, facilities maintenance, regulation, drainage investigation, resource restoration, environmental monitoring, etc., . . . are not narrowly circumscribed but benefit the population at large. . . . Such broad benefits are more in the nature of core government services comparable to the provision of fire and flood protection and street maintenance . . . . than a fee for a direct, tangible service or convenience provided" to the payor).

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

require that the payor have requested stormwater "services," or that "services" be

provided to it, and BPA is currently paying the Cities' stormwater charges accruing

after January 4, 2011.[7]  But the United States contends it is not liable for earlier

stormwater charges, and BPA has either not paid them or is seeking a refund of what

was paid.

## ARGUMENT

**I.     To prevail, the Cities must show a clear and unambiguous waiver of
sovereign immunity for local government stormwater charges.**

It is a seminal principle of our law that the federal "'constitution and the laws

made in pursuance thereof are supreme; that they control the constitution and laws of

the respective States, and cannot be controlled by them.'"  *McCulloch v. Maryland,* 4

Wheat. 316, 426, 4 L.Ed. 579, 606 (1819).  Because of the Constitution's Supremacy

Clause, federal government activities are free from regulation or control by any state.

*EPA v. California,* 426 U.S. at 211.  One important aspect of this federal sovereign

immunity is that the "Supremacy Clause . . . precludes a state from levying a tax on

the operations of the United States."  *Novato Fire Protection District v. United States,* 181

F.3d 1135, 1138 (9th Cir. 1999); *United States v. City of Huntington, WV,* 999 F.2d 71, 73

(4th Cir. 1993).  "Unlike the states' immunity from federal taxation, which is somewhat

---

[7] BPA has been paying the Cities' stormwater bills accruing after the January 4, 2011
amendment, while it is continuing to negotiate over the charged rates to ensure that,
as applied, the rates are reasonable and nondiscriminatory.  The Cities cannot estop
the United States based upon BPA's voluntary payments.  *Office of Personnel
Management v. Richmond,* 496 U.S. 414 (1990).  Other than the stormwater charges in
dispute here, the Cities do not allege that BPA has in any other way failed to comply
with section 313(a).  33 U.S.C. § 1323(a).

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 7

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1    limited, the United States' immunity from state taxation is a 'blanket immunity.'"

2    *United States v. City of Columbia, MO,* 914 F.2d 151, 153 (8th Cir. 1990), *quoting South*

3    *Carolina v. Baker,* 485 U.S. 505, 519, n.11 (1988).  The Cities tacitly assume for the

4

5    purposes of their motion that the charges are taxes.[8]

6            The Cities admit that any waiver of sovereign immunity allegedly including

7    their stormwater charges must be "unequivocally expressed in the statutory text."

8

9    (Cities' Mtn., p. 5).  But the Cities give the Supreme Court's strict construction rule for

10   waivers of sovereign immunity only lip service.  They do not adhere to it.  Under the

11   strict construction rule, any waiver of sovereign immunity must not only be

12

13   unequivocally expressed, but also must be "construed strictly in favor of the

14   sovereign" and "not 'enlarged . . . beyond what the language requires.'"  *D.O.E. v.*

15   *State of Ohio,* 503 U.S. at 615.   The Supreme Court's strict construction rule applies not

16

17   only in determining the existence of a waiver, but also in determining its "scope."

18   *Dept'f of the Army v. Blue Fox,* 525 U.S. 255, 261 (1999); *Lane v. Pena,* 518 U.S. 187, 192

19   (1996).  And any waiver may not be implied, assumed, or based upon inference or

20

21   ambiguity.  *Id.*; *Levin v. United States,* 663 F.3d 1059, 1061, 1063 (9th Cir. 2011).  Most

22   ───────────────────────────

[8] If the Cities' motion is denied, the United States expects to argue that the stormwater
23   charges are a tax under federal law because they are automatically imposed upon all
properties with impervious surfaces, and do not arise because of the payor's voluntary
24   act of seeking a license or using a city service.  *National Cable Television Ass'n v. United*
*States,* 415 U.S. 336, 340 (1974); *In re Lorber Industries of California,* 675 F.2d 1062, 1067
25   (9th Cir. 1982).  Their character as a tax is further shown by, *inter alia,* their imposition
on the vast majority of the Cities' residents, and their use to benefit the general public
26   and not a particular regulated industry or group.  *Velero Terrestrial Corporation v.*
*Caffrey,* 205 F.3d 130, 134 (4th Cir. 2000).  Vancouver's stormwater ordinance expressly
27   states that its purposes are to protect public and private property and prevent water
degradation "to the benefit of all citizens."  VMC § 14.09.010.
28

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 8

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1    important, the Supreme Court has concluded the existence of "plausible" alternative

2    interpretations of statutory language "is enough to establish that a reading imposing

3    monetary liability on the Government is not 'unambiguous'." *United States v. Nordic*

4

5    *Village, Inc.*, 503 U.S. 30, 37 (1992).  The Supreme Court's strict construction rule

6    likewise controls any claim of retroactive waiver of sovereign immunity.  (See below,

7    pp. 18-19).

8

9    II.    **The Cities' waiver argument does not survive the Supreme Court's**
       **strict construction rule, including its strict construction of CWA section 313.**

10

11       The Cities assert that Congress's 1977 amendment to CWA section 313 waived

12   sovereign immunity for their stormwater charges.  The Cities are wrong.  Congress

13   did not unambiguously waive sovereign immunity for local government stormwater

14   charges until its 2011 amendment to that section.

15

16       A.    **Prior to 2011, CWA section 313 did not express an unambiguous**
             **waiver of sovereign immunity that extended to stormwater**
             **charges.**

17

18       The CWA federal facilities provision was enacted in 1972.  CWA section 313, as

19

20   originally enacted in 1972 and up and until its 2011 amendment, included a waiver

21   allowing federal facilities' payment of "reasonable service charges."  CWA § 313; 33

22   U.S.C. § 1323(a) (1972).

23       The necessary first step in any judicial interpretation of statutory text is to

24

25   examine the express statutory text and to give that language its natural, plain, and

26

27

28

8244069.1

1   ordinary meaning.[9]  Under its natural and plain meaning, at all times prior to 2011,

2   Congress' express statutory text **unambiguously** waived sovereign immunity only

3   where the local government provided some "service" to the federal facility to which

4   the municipal charge attached and measured.  But the Cities provided no service to

5   BPA that would support their stormwater assessments.  Instead, the Cities'

6   stormwater taxes have been, and still are, automatically imposed based upon BPA's

7   status as a real property owner.  Consequently, the Cities err by ignoring the

8   requirement of an underlying "service" in the waiver for "payment of reasonable

9
10
11  **service** charges."  33 U.S.C. §1323(a)(1972, 1977, & 2010) (emphasis supplied).

12          The Supreme Court has strictly construed this exact "reasonable services

13  charges" clause in CWA section 313.   That strict Supreme Court construction is

14  contrary to the Cities' broad and uncabined construction.  In *E.P.A. v. California* the

15  Court rejected the States' claim that federal installations were subject to State water

16  pollution permitting authority under CWA section 313.   *E.P.A. v. California,* 426 U.S. at

17
18  201, 212, 221.   In so  ruling, the Court observed that the three-words "reasonable

19  service charges" could be plausibly read as only applying to "charges for performing a

20  service" for the federal facility "such as treating sewage."  *Id.* at 217 & n.30.  Under the

21  Supreme Court's strict construction rule, that plausible interpretation operated to

22
23  defeat the States' broader construction that "reasonable service charges" encompassed

24  charges accompanying State permits.  *Id.* at 216-17; *see Nordic Village, Inc.,* 503 U.S. at

25
26
27
28  [9] *Western Watersheds v. Interior Board of Land Appeals,* 624 F.3d 983, 987, 989 (9th Cir.
    2010); *Munoz v. Mabus,* 630 F.3d 856, 861-62, 864 (9th Cir. 2010).

37.  The Cities cite no authority to rebut the Supreme Court's entirely plausible construction of "reasonable service charges."[10]

Congress' 1977 amendment of the federal facilities provision was not directed at the brief "reasonable service charges" waiver.  Nor did the 1977 amendment unambiguously define what did, and what did not, constitute the "reasonable service charges" for which federal facilities were liable.  Without any proof, the Cities simply assert that their charges represent "reasonable service charges."

The Cities further say that the 1977 amendment constituted an "explicit, expansive waiver" of sovereign immunity that "no court has deemed unclear or ambiguous for over three decades."  (Cities Mtn., p. 7).  The Cities and Amici then cite 1977 legislative history that supposedly made it "unequivocally clear" that federal facilities were thereafter subject to "all provisions of State and local water pollution laws."  (Amici Br., p. 7 & n.7; *accord* Cities' Mtn. pp. 7-8).[11]  But the Cities and Amici

---

[10]The Supreme Court closed its *E.P.A. v. California* opinion by inviting Congress to amend section 313, if Congress determined that federal facilities should be subject to State water pollution permits.  *Id.* at 227-28.  Congress accepted that invitation by amending CWA section 313 in 1977 to explicitly subject federal facilities to "any" state "requirement respecting permits," among other amending language.  33 U.S.C. § 1323(a) (1977).  To that extent the 1977 amendment to CWA section 313 supersedes *E.P.A. v. California.*  But the 1977 amendment does not indicate that the Supreme Court's straight-forward reading of "reasonable service charges" was incorrect.

[11] The Cities' and Amici' citation to legislative history fail because it cannot furnish a waiver of sovereign immunity not unambiguously stated in the statutory text.  *Lane,* 518 U.S. at 192; *Nordic Village,* 503 U.S. at 37.   And the Cities' stormwater ordinances were not even in existence in 1977.  Amici's claim that the 1977 legislative history somehow, without a word, waived sovereign immunity for all future state and local pollution measures is absurd.

United States' Opposition to Defendants' Motion for Partial Summary Judgment (No. 2:11-cv-01156-JLR) – Page 11

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

both forget the Supreme Court's *D.O.E. v. State of Ohio* decision[12] that thereafter again strictly construed section 313, again rejected the claimed waiver of sovereign immunity, and denied the State of Ohio's State claim for monetary recovery against the federal government.[13]  If the Cities and Amici arguments regarding the 1977 amendment were correct, the Supreme Court would have held for the State of Ohio. But it did not; the Court wholly rejected Ohio's claim of waiver.  Section 313(a) remained a limited waiver after its 1977 amendment.   *D.O.E. v. State of Ohio*, 503 U.S. at 620-624 (CWA section 313's supposed "all provisions" language did not constitute a waiver for punitive fines imposed by local law); Comp. Gen. Dec. B-306666, Matter of Forest Service - Surface Water Management Fees (June 5, 2006); 2006 WL 1550189 at *8-9.

That the Supreme Court's strict construction rule controls the Cities' claim of waiver of sovereign immunity is well settled.  *E.g., Lane v. Pena,* 518 U.S. at 192; *Nordic Village,* 503 U.S. at 34.  The Supreme Court has twice specifically applied that rule of strict construction to CWA section 313.  For the Cities to prevail under the Supreme Court's strict rule, the Cities must identify specific statutory language that

---

[12] In *D.O.E. v. State of Ohio* the Supreme Court was asked to determine whether Congress had waived the United States' sovereign immunity for "civil fines imposed by a State for past violations of the Clean Water Act . . . or the Resource Conservation and Recovery Act."  *D.O.E. v. State of Ohio,* 503 U.S. at 611.

[13] Congress later amended the Resource Conservation and Recovery Act ("RCRA") which superseded *D.O.E. v. Ohio* in certain respects.  See Federal Facility Compliance Act of 1992, P.L. 102-386, § 102, 106 Stat. 1505 (October 6, 1992). Congress did not further amend CWA section 313.  *D.O.E. v. State of Ohio's* extremely strict construction of CWA section 313 is binding law today.

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

unambiguously states that their stormwater charges qualify as "reasonable service charges."  But there is no such unambiguous statutory waiver at any time prior to the 2011 amendment.

**B.      The CWA 2011 Amendment demonstrates unequivocal language.**

Congress unambiguously defined what qualifies as "reasonable service charges" only in its 2011 amendment.  The 2011 amendment, P.L. 111-378, § 1, 124 Stat. 4128 (January 4, 2011), amended the CWA federal facilities provision as follows:

> For purposes of this Act, reasonable service charges described in subsection (a) include any reasonable nondiscriminatory fee, charge, or assessment that is—
>
> (A)      based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution (in terms of quantities of pollutants, or volume or rate of stormwater discharge or runoff from the property or facility); and
>
> (B)      used to pay or reimburse the costs associated with any stormwater management program (whether associated with a separate storm sewer system or a sewer system that manages a combination of stormwater and sanitary waste), including the full range of programmatic and structural costs attributable to collecting stormwater, reducing pollutants in stormwater, and reducing the volume and rate of stormwater discharge, regardless of whether that reasonable fee, charge, or assessment is denominated a tax.

P.L. 111-378, § 1, 124 Stat. 4128, *codified at* 33 U.S.C. § 1323(c) (2011).  Using no fewer than 120 words to define "reasonable service charges," Congress for the first time in 2011 unambiguously waived sovereign immunity for certain defined municipal

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

stormwater charges.[14]  And for the first time Congress unambiguously waived

immunity for stormwater assessments, "regardless of whether that reasonable fee,

charge, or assessment is denominated as a **tax.**"  33 U.S.C. 1323(c)(1)(B) (2011) (bold

supplied).

The foregoing 2011 amendment to section 313 explains in great detail precisely

which local stormwater charges qualify as "reasonable service charges" for which

immunity is waived.  The great specificity of the 2011 amendment, specificity that was

previously entirely absent, shows that no unambiguous waiver for stormwater

charges existed before 2011.

>    **C.**     **Until its 2011 amendment, CWA section 313 contrasted**
>             **with other federal environmental statutes' unambiguous waivers**
>             **for specified local governmental environmental costs.**

The CWA, of course, is not the only federal environmental statute.  Many other

federal environmental statutes exist, and some have waivers with respect to federal

facilities.  Just as the 2011 CWA amendment shows, so too do these other much earlier

waivers prove that Congress has long known exactly how to unambiguously waive

federal facility immunity for specified local governmental environmental costs.

---

[14] The Cities assert that the 2011 amendment merely codified the waiver of federal immunity previously stated in *Massachusetts v. United States,* 435 U.S. 444 (1978). (Cities Mtn., p. 8).  The Cities are far from the mark.  *Massachusetts* considered <u>state</u> immunity from <u>federal</u> taxation, *id.* at 453, 456, 457; not federal immunity from state taxation that is at issue here.  *City of Columbia,* 914 F.2d at 153.  And because federal immunity is broader than state immunity, *id., Massachusetts* did not, and could not, define the specific contours of CWA section 313's "reasonable service charges" waiver. *See id.* at 153-54; *U.S. v. City of Huntington,* 999 F.2d at 73, n.5.

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

For example, RCRA also has a federal facilities provision that has included a waiver for "reasonable service charges" since its enactment in 1976.  See 42 U.S.C. § 6961 (1977).[15]  In the Federal Facility Compliance Act of 1992, enacted in part in response to the Supreme Court's *D.O.E. v. State of Ohio* decision, Congress amended RCRA's federal facility provision to define its respective "reasonable service charges" waiver as follows:

> The reasonable service charges referred to in this subsection include, but are not limited to, fees or charges assessed in connection with the processing of and issuance of permits, renewal of permits, amendments to permits, review of plans, studies, and other documents, and inspection and monitoring of facilities, as well as any other **nondiscriminatory charges that are assessed in connection with a Federal, State, interstate, or local solid waste regulatory program.**

Federal Facility Compliance Act of 1992, P.L. 102-386, § 102, 106 Stat. 1505 (October 6, 1992) (emphasis supplied); 42 U.S.C. § 6961 (1994).  Even though *D.O.E. v. Ohio* had strictly construed and rejected the alleged waivers both in RCRA and in CWA, Congress in 1992 did **not** similarly amend the CWA's federal facilities provision to define its respective "reasonable service charges" waiver to include the charges assessed in connection with specified local government water pollution control programs.[16]

---

[15] See Resource Conservation and Recovery Act of 1976, P.L. 94-580, 90 Stat. 2795 (October 1, 1976); 42 U.S.C. § 6961 (1977).

[16] Another example arises from Congress' 1996 amendment to the Safe Drinking Water Act such that its "reasonable service charges" waiver included certain charges assessed to federal agencies in connection with a "local regulatory program respecting the protection of wellhead areas or public water systems or respecting any underground injection."  P.L. 104-182, Title I, § 129, 110 Stat. 1660 (August 6, 1996); 42

United States' Opposition to Defendants' Motion for Partial Summary Judgment (No. 2:11-cv-01156-JLR) – Page 15

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

1    Section 110(a)(2) of the Clean Air Act ("CAA") is its long-established federal

2 facilities provision.  See 42 U.S.C. § 7418.  Unlike the CWA or the RCRA, the CAA

3 federal facilities provision has never included a waiver for State and local "reasonable

4 service charges."  Id.  Nevertheless, in 1990 Congress amended  CAA section 110(a)(2)

5 to waive federal facilities' immunity from, among other matters,  "any requirement to

6 pay a fee or charge imposed by any State or local agency to defray costs of its air

7 pollution regulatory program."   P.L. 101-549,  § 101(e), 104 Stat. 2399, 2409 (November

8 15, 1990); 42 U.S.C. §7418.  This CAA amendment demonstrates that an expanded

9 waiver for charges that support the expenses of a local environmental regulatory

10 program is not related to any "reasonable service charges" to the federal facility,

11 unless Congress so defines it.   And though Congress amended the CAA's federal

12 facilities provision in 1990 to burden federal facilities with their share of local

13 government air pollution regulatory costs, Congress did not additionally burden

14 federal facilities under  CWA section 313.

15    To be sure, Congress was not ignoring the CWA.  Bills of varying substantive

16 content were introduced in Congress during the 1990s to amend CWA section 313 to

17 expand its waiver of sovereign immunity to include certain local government water

18 pollution control costs.  But none of those bills became law.[17]  This Court should reject

---

U.S.C. § 300j-6.  Once again, in 1996 Congress did not enact a similar amendment
under the CWA section 313 to obligate federal facilities also to pay certain other
specified local government water pollution control charges.

[17] *E.g.,* 1993 H.R. 340, § 2, 103rd Cong., 2d Sess. (1993) (seeking to amend CWA § 313(a)
to define "reasonable service charges" to include "any other nondiscriminatory

8244069.1

the Cities' effort to amend CWA section 313(a) via litigation where Congress did not

so itself.

### III.   The 2011 amendment is not retroactive

#### A.   The Cities and Amici contradict themselves

The Cities say that an amendment "clarifies" prior law (and therefore is

retroactive) where the earlier "statutory language is ambiguous and therefore in need

of clarification." (Cities' Mtn., p. 10). The Cities cite 2011 legislative history that CWA

section 313 previously contained "ambiguity" regarding whether it waived sovereign

immunity for local government stormwater charges. (Id., p. 9). The Cities'

retroactivity argument thereby contradicts their previous argument that the 1977

amendment had **unambiguously** waived sovereign immunity for the Cities'

stormwater charges. The Cities cannot have it both ways. With respect to their

stormwater charges, CWA section 313 could not have been both ambiguous and

unambiguous at the same time.

Amici's arguments reflect the same fundamental contradiction. After citing

1977 legislative history that supposedly made it "unequivocally clear" that federal

charges that are assessed in connection with a Federal, State, interstate, or local water
pollution regulatory program"); 1995 H.R. 961, § 316, 104th Cong., 1st Sess. (1995)
(Clean Water Act Amendments of 1995, including proposal to amend CWA federal
facilities provision to define "reasonable service charges" to include
"nondiscriminatory charges that are assessed in connection with a federal, state,
interstate, or local water pollution regulatory program"); 1999 S. 669, § 2, 106th Cong.,
1st Sess. (1999) (Federal Facilities Clean Water Compliance Act of 1999, including
proposed amended CWA section 313 waiver to include "any other nondiscriminatory
charge that is assessed in connection with a federal, state, interstate, or local regulatory
program concerning the control and abatement of water pollution").

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 17

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

facilities are subject to all local water pollution laws, Amici Br., p. 7, Amici then cite

2010 legislative history that there is "current ambiguity over the interpretation of

'reasonable service charges.'" (Amici Br., p. 9). "Current ambiguity" cannot be

squared with what was truly "unequivocally clear."

### B. The Cities' retroactivity argument fails under the Supreme Court's strict construction rule.

The Cities and Amici also cite the wrong legal standard for whether an

amendment is retroactive. The Cities cite no authority, Ninth Circuit or otherwise,

with respect to the proper legal standard for retroactivity of an amendment where

federal sovereign immunity is at issue.[18]  Nor do Amici.[19]  The proper legal standard

for evaluating whether an amendment waives sovereign immunity retroactively is

strict. The Cities do not satisfy it.

---

[18] The Cities cite three cases to support their legal standard for retroactivity, none of which involve federal sovereign immunity. These cases also deal the affect of amendments to a pending appeal, quite a different matter than the Cites' much broader claim of retroactivity here. See *United States v. Sanders*, 67 F.3d 855, 858 (9th Cir. 1995) (addressing whether amendment to criminal sentencing guidelines occurring after sentencing may be applied to pending appeal); *Beverly Community Hosp. v. Belshe*, 132 F.3d 1259, 1264 (9th Cir. 1997) (addressing how State of California Medicare obligations are affected by a federal amendment expressly stating it is retroactive with respect to cases pending as of its enactment date); *Fishing Co. of Alaska v. United States*, 195 F.Supp.2d 1239, 1255 (W.D. Wash. 2002) (private fishing company claiming not liable for violating certain halibut and crab fishing limits; company's retroactivity argument rejected).

[19] See Amici Br., p. 7 & n.10, citing *Piamba Cortes v. American Airlines*, 177 F.3d 1272 (11th Cir. 1999) (considering retroactive effect of protocol to Warsaw Convention vis-à-vis to pending suit between passenger and airline); *United States v. Quinn*, 18 F.3d 1461, 1467 (9th Cir. 1994) and *United States v. Carrillo*, 991 F.2d 590 (9th Cir. 1994) (both cases interpreting potential retroactivity issues with respect to the federal Sentencing Guidelines' application to criminal appeals).

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 18

Because sovereign immunity is again at stake, the strict construction rule controls the Cities' claim of retroactivity.  "A waiver of sovereign immunity must be strictly  construed; it may not be applied retroactively unless the Congress clearly so intended."  *Brown v. Sec'y of the Army*, 78 F.3d 645, 647, 649-50 (D.C. Cir. 1996), *cert denied*, 519 U.S. 1040 (1997); *Trout v. Sec'y of Navy*, 317 F.3d 286, 290 (D.C. Cir. 2003) (rule of strict construction does not allow for retroactive waivers of sovereign immunity);  *Oregon Natural Desert Association v. Locke,* 572 F.3d 610, 617 (9th Cir. 2008) (quoting *Brown* and *Trout* with approval and noting that any "new waiver of sovereign immunity" will not be applied retroactively); *United States v. Matson Nav. Co. ("The Louie III"),* 201 F.2d 610, 616 (9th Cir. 1953) ("waiver of sovereign immunity creates a new cause of action which has no retroactive effect unless specifically granted").  To hold that a statute waiving sovereign immunity applies to a period of time not envisioned by Congress  risks "imposing upon the public fisc an unanticipated and potentially excessive liability."  *Brown,* 78 F.3d at 650.

The starting point for analysis is again the 2011 amendment's express text. Congress is very familiar with the express language that renders an amendment retroactive.[20]   But the 2011 amendment includes no express declaration of any

---

[20] *E.g.*, P.L. 85-866, § 1(c)(1), 72 Stat. 1606 (Sept. 2, 1958) (Technical Amendments Act of 1958 states that particular amendment "shall apply to taxable years beginning after December 31, 1953, and ending after August 16, 1954"); cited as expressly retroactive in *Rank v. United States,* 345 F.2d 337, 344 & n.25 (5th Cir. 1965); *Garrido-Morato v. Gonzalez,* 485 F.3d 319, 323 (5th Cir. 2007) (statute's enlarged definition of aggravated felony "applies regardless of whether the conviction was entered before, on, or after the date of the enactment of this paragraph," quoting P.L. 108-208, 110 Stat. 3009-628); *Papageorgiou v. Gonzales,* 413 F.3d 356 (3d Cir. 2005) (federal immigration law

8244069.1

retroactive effect, much less retroactivity to a date certain.  There surely is no text

supporting the Cities' assertion of retroactivity to 1977, a stunning claim of 34-year

retroactivity.  Because the 2011 amendment does not expressly state it is retroactive,

the Cities' claim fails.   No further analysis is required or proper.

The Cities and Amici cite some weak legislative history from the 2011

amendment, but that argument goes nowhere.  *First,* because waivers of sovereign

immunity must be unambiguous, a "statute's legislative history cannot supply a

waiver that does not appear clearly in any statutory text."  *Lane,* 518 U.S. at 192.  As

Justice Scalia has written, "legislative history has no bearing" for waivers of sovereign

immunity.  *Nordic Village,* 503 U.S. at 37.  "The 'unequivocal expression' of elimination

of sovereign immunity that we insist upon is an expression in statutory text.  If clarity

does not exist there, it cannot be supplied by a committee report."  *Id.  Second,* the cited

history is weak.  Neither the Cities nor Amici are able to quote any history actually

stating that the amendment is to be retroactive.   And, finally, *third,* the Cities and

particularly Amici cite to Congressional floor comments that are among the least

authoritative categories of legislative history, even when from bill sponsors.  *Garcia v.*

*United States,* 469 U.S. 70, 76 & n.3 (1984); *Consumer Product Safety Comm. v. GTE*

---

amendment expressly retroactive to pending petitions for review because amendment
explicitly stated that it applied to all deportation orders "issued before, on, or after the
date of the enactment" of amendments); *Humetrix v. Gemplus,* 268 F.3d 910, 922 (9th Cir.
2001); see also the Cities' cited *Beverly Community Hosp. v. Belshe,* 132 F.3d 1259, 1264
(9th Cir. 1997) (statute expressly retroactive with respect to cases "pending as of . . the
date of the enactment of this Act").

8244069.1

1  *Sylvania, Inc.,* 447 U.S. 102, 118 (1980).  As a matter of law, the Cities' and Amici's

2  citation to legislative history cannot help them.  *Nordic Village,* 503 U.S. at 37.

3
4           Amici then overreach by citing an extremely narrow Office of Legal Counsel

5  opinion as supporting retroactivity.  (Amici Br., pp. 10-11).  That opinion is not

6  relevant to retroactivity.[21]  Amici are even farther afield with their purported "national

7  policy reasons" that supposedly justify retroactivity of the 2011 amendment.  (Amici

8  Br., pp. 14-16).  Only Congress can waive sovereign immunity.  Public policy

9  arguments are unavailing.  *Francis v. United States,* 1998 WL 211968 at *1 (9th Cir. 1998)

10 *citing Library of Congress v. Shaw,* 478 U.S. 310, 321 (1986).[22]

11
12          The 2011 amendment does not expressly state that it is retroactive.   Because

13 federal sovereign immunity is at issue, that terminates the argument in the United

14 States' favor.  BPA is not liable for any stormwater charges prior to January 4, 2011.

15
16
17
18
_____

19 [21] See OLC, Reimbursement or Payment Obligation of the Federal Government under
   Section 313(c)(2)(B) of the Clean Water Act (February 25, 2011), 2011 WL 1085035
20 (O.L.C.), 2011 OLC LEXIS 9 ("OLC Opinion").  The OLC Opinion only addresses the
   impact of new subsection 313(c)(2)(B), 33 U.S.C. § 1323(c)(2)(B) (2011), on whether a
21 specific line-item appropriation is required before a federal agency may now be
   obligated to pay State or local stormwater charges.  OLC Opinion, pp. 1, 2, 5.  The
22 opinion does not address the new definition for "reasonable service charges," much
   less whether that new definition is retroactive.  Id., pp. 2, 5, n.4.
23
24 [22] This Court should hold that the 2011 amendment is not retroactive.  Amici's dire
   warnings of supposed subsequent "severe adverse effects" to municipalities, and so
25 forth, are nothing more than unsupported assertions.  For example, Amici cite to the
   United States' large landholdings across the country to imply the United States
26 substantially contributes to stormwater pollution.  (Amici Br., p. 5).  But the national
   parks and wilderness areas do not contribute to urban stormwater runoff.  Amici's
27 grave warnings are unproven.
28

United States' Opposition to Defendants' Motion for Partial Summary
Judgment (No. 2:11-cv-01156-JLR) – Page 21

**IV.    The Cities assume they satisfy the 2011 amendment's definition of "reasonable service charges."**

The Cities make yet one more assumption.  The Cities assume that their stormwater charges automatically qualify as "reasonable services charges" as defined by the 2011 amendment.  The 2011 amendment does not waive sovereign immunity for all municipal stormwater charges, but only for those that satisfy its specific requirements.  The 2011 amendment states that "reasonable service charges" only include charges that are "nondiscriminatory."  33 U.S.C. 1323(c)(1) (2011).   But the Cities' stormwater rate structures are discriminatory on their face, with Vancouver giving itself a 70% discount on the City's street acreage.   VMC § 14.09.060(B), (C) & (E); RMC § 8-2-3(E)(1)(g) & (i).   The Cities also bear the burden of proof to show that they come within the alleged waiver of sovereign immunity.  *Levin*, 663 F.3d at 1063.  Their joint motion also necessarily fails because they have presented no evidence that each City's rate structure bears "some fair approximation of the proportionate contribution of the property or facility to stormwater pollution" required under the 2011 amendment, if it were to be applied retroactively.    33 U.S.C. 1323(c)(1)(a) (2011).  That fair approximation cannot be assumed without proof for both Cities where Renton's and Vancouver's rate structures are not consistent.

United States' Opposition to Defendants' Motion for Partial Summary Judgment (No. 2:11-cv-01156-JLR) – Page 22

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1

**CONCLUSION**

The 1977 amendment did not unambiguously define municipal stormwater charges as "reasonable service charges" under CWA section 313(a).  The 2011 amendment did not unambiguously state its waiver of sovereign immunity was to be applied retroactively.  This ends the analysis.  The Cities' motion for summary judgment should be denied.

Dated:  March 23, 2012

                              Respectfully submitted,

                              JENNY A. DURKIN
                              United States Attorney

                              JOHN A. DICICCO
                              Principal Deputy Assistant Attorney General
                              Tax Division

                              BRIAN C. KIPNIS
                              Assistant United States Attorney
                              5220 United States Courthouse
                              700 Stewart Street
                              Seattle, WA  98101
                              Tel:  (206) 553-7970
                              Fax:  (206) 553-4073
                              Email:  Brian.Kipnis@usdoj.gov

                              /s/ Jonathan D. Carroll
                              JONATHAN D. CARROLL
                              Trial Attorney, Tax Division
                              U.S. Department of Justice
                              Post Office Box 227
                              Ben Franklin Station
                              Washington, D.C.  20044
                              Tel:  (202) 307-6669
                              Fax:  (202) 514-6866
                              Email:  Jonathan.D.Carroll@usdoj.gov

U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227, Washington DC 20044
(202) 307-6669

8244069.1