1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   UNITED STATES OF AMERICA,                CASE NO. C11-1156JLR

11                          Plaintiff,         ORDER

12                   v.

13   CITY OF RENTON, et al.,

14                          Defendants.

15                        **I.      INTRODUCTION**

16          Plaintiff United States of America ("United States") ceased paying fees assessed

17   by Defendants City of Renton ("Renton") and City of Vancouver ("Vancouver") for their

18   stormwater systems in 2009 and 2010, respectively, but resumed paying the fees effective

19   January 4, 2011.  The United States seeks the return of any fees paid prior to January 4,

20   2011.  Renton and Vancouver (collectively, "the Cities") seek the fees not paid prior to

21   that date.  Before the court at this time is the Cities' motion for partial summary judgment

22   (Dkt. # 17) and the United States' motion to defer ruling on the Cities' motion for partial

summary judgment, under Federal Rule of Civil Procedure 56(d) (Dkt. # 30).  Having

reviewed the submissions of the parties, the record, and the relevant law, and having

heard oral argument on May 17, 2012, the court GRANTS in part and DENIES in part

the Cities' motion for summary judgment (Dkt. # 17) and DENIES in part and DENIES

in part as MOOT the United States' Rule 56(d) motion (Dkt. # 30).

## II.   BACKGROUND AND PROCEDURAL HISTORY

**A.   The Clean Water Act**

As amended in 1977, § 313 of the Clean Water Act states,

> Each department, agency, or instrumentality of . . . the Federal Government
> (1) having jurisdiction over any property or facility . . . shall be subject to,
> and comply with, all Federal, State, interstate, and local requirements,
> administrative authority, and process and sanctions respecting the control
> and abatement of water pollution in the same manner, and to the same
> extent as any nongovernmental entity including the payment of reasonable
> service charges.  The preceding sentence shall apply (A) to any requirement
> whether substantive or procedural . . . and (C) to any process and sanction
> . . . .  This subsection shall apply notwithstanding any immunity of such
> agencies, officers, agents, or employees under any law or rule of law.

Clean Water Act ("CWA") § 313(a) (*see* 33 U.S.C. § 1323(a)) (as amended by Pub.L. 95-

217, §§ 60, 61(a), 91 Stat. 1566 (1977)).[1]

---

[1] The 1972 text of the Clean Water Act linked "reasonable service charges" to "Federal,
State, interstate, and local requirements."  *See* An Act to amend the Federal Water Pollution
Control Act, Pub. L. No. 92-500, 86 Stat. 816, 875 (1972).  It stated that the Federal Government
"shall comply with Federal, State, interstate, and local requirements respecting control and
abatement of pollution to the same extent that any person is subject to such requirements,
including the payment of reasonable service charges."  *Id.*  In 1976, the Supreme Court held that
Congressional consent to local regulation under the 1972 Act did not extend to state permitting
requirements in part because the language was not unambiguous that fees for obtaining a permit,
and thus the requirement of a permit itself, were a part of the "reasonable service charges"
required by the Act.  *EPA v. Cal. EPA. ex rel. State Water Resources Control Bd.*, 426 U.S. 200,
216-17 (1976).  The following year, Congress responded with amendments to the Clean Water

To clarify the phrase "reasonable service charges," Congress added subsection (c) to the Clean Water Act ("Stormwater Amendment") in 2011.  It states,

> For the purposes of this chapter, reasonable service charges described in subsection (a) include any reasonable nondiscriminatory fee, charge, or assessment that is--
>
> > (A) based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution (in terms of quantities of pollutants, or volume or rate of stormwater discharge or runoff from the property or facility); and
> >
> > (B) used to pay or reimburse the costs associated with any stormwater management program (whether associated with a separate storm sewer system or sewer system that manages a combination of stormwater and sanitary waste), including the full range of programmatic and structural costs attributable to collecting stormwater, reducing pollutants in stormwater, and reducing the volume and rate of stormwater discharge, regardless of whether that reasonable fee, charge, or assessment is denominated a tax.

CWA § 313(c)(1) (*see* 33 U.S.C. § 1323(c)) (as amended by Pub.L. 111-378, § 1, 124 Stat. 4128 (2011)).

**B.     Renton's Stormwater Program**

Renton has operated "a storm and surface water utility" since 1987.  (Zimmerman Aff. (Dkt. # 18) ¶ 2.)  Renton is required under the Clean Water Act to take efforts to minimize pollution from stormwater, and it maintains its stormwater program to comply with those requirements and with requirements under Washington State law and the

---

Act regarding substantive and procedural requirements, including permitting, and an explicit waiver of sovereign immunity.  Thus, the requirement that the Federal Government pay reasonable service charges appears to be part of Congress' consent that the Federal Government "be subject to, and comply with . . . local requirements."  § 313(a).

ORDER- 3

1  National Pollution Discharge Elimination System. (*Id.* ¶ 3.) It charges rates based on

2  square footage of impervious surface. (*Id.* ¶ 4.) "The fees collected are used solely for

3  expenditures associated with the surface water utility to provide, maintain, and improve

4  Renton's municipal separate storm sewer system." (*Id.* ¶ 5.)

5       The Bonneville Power Administration ("BPA"), an entity of the United States,

6  administers two parcels within Renton, known as the Maple Valley Substation. (*Id.* ¶ 4.)

7  BPA paid Renton stormwater fees for those parcels until July 30, 2009, when BPA

8  claimed sovereign immunity and terminated its payments. (*Id.*) BPA resumed payments

9  for the storm and surface water fees with an effective date of January 4, 2011. (*Id.*)

10  **C.    Vancouver's Stormwater Program**

11      Vancouver has operated a "municipal separate storm sewer system" since January

12  1995. (Carlson Aff. (Dkt. # 19) ¶ 2.) Like Renton, Vancouver is required under the

13  Clean Water Act to take efforts to minimize pollution from stormwater, and it maintains

14  the system to comply with those requirements and requirements under Washington State

15  law and the National Pollution Discharge Elimination System. (*Id.*) It charges rates

16  based on the square footage of impervious surface, with uniform rates for each class of

17  users. (*Id.*)

18      BPA owns property, the Ross Complex facility, within Vancouver. (*Id.* ¶ 5.) In

19  1996, BPA provided a map to Vancouver showing the impervious surface at the facility.

20  (*Id.*) Beginning with an effective date of January 1, 1995, BPA paid the stormwater fees

21  until January 21, 2010. (*Id.*)

22

1    After Congress passed the Stormwater Amendment, BPA submitted questions to

2    Vancouver about its "method of rate calculation, services provided, and methods of rate

3    reduction," and it met with the city on May 18, 2011.  (*Id.* ¶ 7.)  In September 2011, BPA

4    resumed payments for the stormwater fees, retroactive to January 4, 2011.  (*Id.*)  The

5    United States declares that it is "paying the newly accruing chares [sic] only as it

6    continues to negotiate over the charged rates to ensure that . . . the rates are reasonable

7    and nondiscriminatory."  (Reply to U.S. Mot. (Dkt. # 40) at 6.)

8    **D.     Procedural History**

9        On July 12, 2011, the United States filed a complaint in the Western District of

10   Washington for declaratory relief and a refund of fees paid to Renton and Vancouver

11   prior to January 4, 2011.  (Compl. (Dkt. # 1).)  Count 1 alleges that the stormwater fees

12   are taxes and that the United States has not waived its immunity to those taxes prior to

13   January 4, 2011.  (*Id.* ¶¶ 22-24.)  Count 2 alleges that the United States is not liable for

14   late payment penalties.  (*Id.* ¶ 27.)  Count 3 alleges that the United States is entitled to a

15   refund for fees paid to Renton between July 12, 2005, and June 30, 2009, in the amount

16   of $38,606.00.  (*Id.* ¶ 30.)  Count 4 alleges that the United States is entitled to a refund

17   for fees paid to Vancouver between July 12, 2005, and January 31, 2010, in the amount

18   of $443,148.00.  (*Id.* ¶ 33.)  The United States requests that the court enter a judgment

19   declaring that it is not liable for any charges prior to January 4, 2011, and directing the

20   Cities to return any fees paid between July 12, 2005, and January 4, 2011.  (*Id.* at 6.)

21       Renton filed a counterclaim requesting, with respect to King County Tax Parcel

22   No. 2023059082, $7,530.75 for unpaid fees from December 30, 2008, through June 30,

2009, and a late fee of $95.03; $8,242.44 for unpaid fees from July 30, 2009, through December 30, 2009; $8,242.44 for unpaid fees from January 30, 2010, though June 30, 2010; and $8,370.84 for unpaid fees from July 30, 2010, through January 3, 2011. (Renton Counterclaim (Dkt. # 9) ¶¶ 58-59, 61, 63, 65.)  Renton also requests, with respect to Tax Parcel No. 2123059042, $8,525.72 for unpaid fees from January 30, 2008, through January 3, 2011.  (*Id*. ¶ 67.)  It further requests judgment for past due penalties and interest.  (*Id*. ¶ E.)

Vancouver asserts in its answer and counterclaim that the amount the United States paid from July 12, 2005, though January 31, 2010, was $418,599.04, not $443,148.00.  (Vancouver Counterclaim (Dkt. # 10) ¶ 32.)  It also requests $2,999.37, including a 10% penalty, for unpaid fees from January 22, 2010, through January 31, 2010; $102,278.66—or $9,298.06 for each month from February 1, 2010, through December 31, 2010, including a 10% penalty; and $899.81, including a 10% penalty, for the period from January 1, 2011, through January 3, 2011.  (*Id*. ¶¶ 58-82.)  Vancouver also requests judgment for past due penalties and interest.  (*Id*. ¶ E.)

On February 7, 2012, the Cities filed a joint motion for partial summary judgment. (SJ Mot. (Dkt. # 17).)  They ask the court to rule that (1) the Clean Water Act waives the sovereign immunity of the United States with respect to payments for reasonable service charges imposed by local governments for the control and abatement of water pollution; (2) the Stormwater Amendment was a clarification, rather than an amendment, of the United States' waiver of immunity and responsibility to pay reasonable service charges

1   under the Clean Water Act; and (3) the United States is responsible for paying

2   stormwater management fees imposed prior to January 4, 2011.  (*Id.* at 11-12.)

3         In response, the United States argues that a waiver of sovereign immunity and the

4   scope of a waiver must be unambiguous, and that sovereign immunity for the stormwater

5   charges was not waived until the 2011 Stormwater Amendment.  (Resp. to SJ Mot. (Dkt.

6   # 25) at 14.)  The United States further asserts that the charges imposed are taxes and not

7   service charges because it never requested a service, and that the Cities have not provided

8   a service to the United States.  (Statement of Material Facts in Opposition to SJ Mot.

9   ("U.S. Facts") (Dkt. # 26) ¶ 2.)  The United States also argues that the Cities have not

10  demonstrated that their stormwater charges automatically qualify as reasonable service

11  charges, in particular the requirement that they be nondiscriminatory and that the rates be

12  based on a fair approximation of the United States' contribution to stormwater pollution.

13  (Resp. to SJ Mot. at 27.)

14        On March 23, 2012, the United States filed a motion to defer ruling on the Cities'

15  motion for partial summary judgment, pursuant to Rule 56(d).  (U.S. Mot. (Dkt. # 30).)

16  The United States requests—should the court conclude that the United States has not

17  submitted sufficient evidence to create a genuine dispute of material fact as to the Cities'

18  motion for summary judgment—that the court give it additional time to conduct

19  discovery.[2]  (*Id.* at 3; Reply to U.S. Mot. at 3.)

20

---

21      [2] The United States also requests that the court grant partial summary judgment that the

22  2011 Stormwater Amendment is not retroactive and that the Cities' stormwater charges did not
qualify as reasonable service charges prior to the 2011 amendment.  (Reply to U.S. Mot. at 2, 8.)

### III.    ANALYSIS

**A.    The Cities' Motion for Summary Judgment**

The court will first review the standards for summary judgment and for determining whether Congress has waived the United States' sovereign immunity.  It will then analyze the Cities' claims that: (1) the Clean Water Act waives sovereign immunity with respect to payments for reasonable service charges, (2) the Stormwater Amendment was a clarification rather than an amendment, and (3) the United States is responsible for paying reasonable service charges for stormwater programs prior to the Stormwater Amendment.  For the reasons described below, the court grants the Cities' motion for summary judgment on the first two issues, and grants in part and denies in part the Cities' motion on the third issue.

### 1.  Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (citations and quotations omitted).

The moving party has the initial burden of producing evidence or showing the absence of evidence and the burden of persuasion on the motion. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party may meet

The court will not consider this request as it was improperly raised in a reply brief supporting a non-dispositive motion.

1  its burden of production by producing "evidence negating an essential element of the

2  nonmoving party's case" or by showing "that the nonmoving party does not have enough

3  evidence of an essential element of its claim or defense to carry its ultimate burden of

4  persuasion at trial." *Id.* at 1106.  The moving party must first have "made reasonable

5  efforts . . . to discover whether the nonmoving party has enough evidence to carry its

6  burden of persuasion at trial." *Id.* at 1105.  Then, the moving party "need only point out

7  that there is an absence of evidence to support the nonmoving party's case." *Devereaux*

8  *v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citations and quotations omitted).

9         If the moving party carries its initial burden of production, the nonmoving party

10  "must produce evidence to support its claim or defense." *Nissan*, 210 F.3d at 1103.  The

11  nonmoving party "must provide . . . evidence that set[s] forth specific facts showing that

12  there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (internal quotations and

13  citations omitted).  If the nonmoving party does not "produce enough evidence to create a

14  genuine issue of material fact, the moving party wins the motion for summary judgment."

15  *Nissan*, 210 F.3d at 1103.

16         **2.  Waiver of Sovereign Immunity Standard**

17         "[A] waiver of sovereign immunity must be unequivocally expressed in statutory

18  text." *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (citations and quotations omitted).

19  "Any ambiguities in the statutory language are to be construed in favor of immunity,"

20  and "[a]mbiguity exists if there is a plausible interpretation of the statute that would not

21  authorize money damages against the Government." *Id*.  Moreover, any ambiguities in

22  the scope of a waiver are construed in favor of the Government. *Id*.  Courts cannot

1    "expand the scope of Congress' sovereign immunity waiver beyond what the statutory

2    text clearly requires," *id*. at 1453, but they also cannot "narrow the waiver that Congress

3    intended," *Aageson Grain & Cattle v. U.S. Dept. of Agric.*, 500 F.3d 1038, 1045 (9th Cir.

4    2007) (quoting *U.S. v. Kubrick*, 444 U.S. 111, 117-18 (1979)).

5        The Ninth Circuit has held that a waiver of sovereign immunity "will not be

6    applied retroactively if" it is established in a "new law [that] provides a *new* waiver of

7    sovereign immunity." *Or. Natural Desert Ass'n v. Locke*, 572 F.3d 610, 617 (9th Cir.

8    2009) (emphasis in original).  It appears to be a novel question of law, however, whether

9    a new law may be applied retroactively, in the absence of a specific statement declaring

10   the law's retroactive effect, when it purports to clarify an *existing* waiver of sovereign

11   immunity.

12       The Supreme Court has held "that the sovereign immunity canon is a tool for

13   interpreting the law and that it does not displace the other traditional tools of statutory

14   construction." *Cooper*, 132 S. Ct. at 1448 (citations, quotations, and indications of

15   alterations omitted).  Congress does not have to "use magic words" to waive sovereign

16   immunity, but "the scope of Congress' waiver [must] be clearly discernable [sic] from the

17   statutory text in light of traditional interpretive tools." *Id*.

18       Among these interpretive tools is Congress' power to clarify the law—"to confirm

19   what the law has always meant." *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259,

20   1265 (9th Cir. 1997).  "Subsequent legislation declaring the intent of an earlier statute is

21   entitled to great weight in statutory construction." *Loving v. United States*, 517 U.S. 748,

22   770 (1996) (quotations, citations, and indications of alteration omitted); *see also Beverly*,

ORDER- 10

1    132 F.3d at 1265.  This is particularly true where Congress formally declares an act to be

2    a clarification of the earlier statute.  *Beverly*, 132 F.3d at 1265-66.  When a court thus

3    deems an amendment to be "clarifying rather than substantive," the amendment is

4    "[n]ormally . . . applied retroactively."  *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689

5    (9th Cir. 2000) (citations and quotations omitted).

6        **3.  The Clean Water Act Unambiguously Waives Sovereign Immunity**

7        The Cities seek a ruling that the Clean Water Act waived the sovereign immunity

8    of the United States with respect to payments for reasonable service charges imposed by

9    local governments for the control and abatement of water pollution.  (SJ Mot. at 11-12.)

10   Since 1977, the Clean Water Act has required that the Federal Government comply with

11   all state and local "requirements, administrative authority, and process and sanctions

12   respecting the control and abatement of water pollution in the same manner, and to the

13   same extent as any nongovernmental entity including the payment of reasonable service

14   charges."  CWA § 313(a), as amended in 1977 (*see* 33 U.S.C. § 1323).  The Clean Water

15   Act states that such compliance is necessary "notwithstanding any immunity . . . under

16   any law or rule of law."  *Id.*  This language reflects an unequivocal and unambiguous

17   waiver of sovereign immunity.  *See Cooper*, 132 S. Ct. at 1448.  The court concludes,

18   based on the above-cited language, that Congress clearly waived the Federal

19   Government's sovereign immunity from the "payment of reasonable service charges" for

20

21

22

"the control and abatement of water pollution."[3]  § 313(a).  Moreover, the United States conceded in oral argument that it disputes only the scope of the waiver prior to the Stormwater Amendment, not the existence of the waiver of reasonable service charges in the 1977 version of the Clean Water Act.  As there are no issues of material fact and the Cities have demonstrated that they are entitled to judgment as a matter of law, the court grants the Cities' motion for summary judgment on this issue.

### 4.  The Stormwater Amendment Was a Clarification Rather than a Substantive Amendment of the Clean Water Act

Next, the Cities ask for a ruling that the Stormwater Amendment was a clarification of the waiver of sovereign immunity in the Clean Water Act rather than a substantive amendment to the law.  (SJ Mot. at 11.)  When Congress added § 313(c) to the Clean Water Act with the Stormwater Amendment, it illustrated the meaning of "reasonable service charges" by stating non-exclusive criteria for such charges.[4]  It also

---

[3] In *City of Cincinnati v. United States*, the United States District Court for the Southern District of Ohio similarly concluded that a "stormwater system charge [fell] squarely within the waiver of sovereign immunity contained in" the 1977, pre-Stormwater Amendment text of § 313. No. C1-03-731 (S.D. Ohio March 27, 2007) (order regarding summary judgment at 8).

[4] Section 313(c) states:

For the purposes of this chapter, reasonable service charges described in subsection (a) *include* any reasonable nondiscriminatory fee, charge, or assessment that is--

(A) based on some fair approximation of the proportionate contribution of the property or facility to stormwater pollution (in terms of quantities of pollutants, or volume or rate of stormwater discharge or runoff from the property or facility); and

(B) used to pay or reimburse the costs associated with any stormwater management program (whether associated with a separate storm sewer system or

1  stated that the "reasonable service charges described in subsection (a) include any

2  reasonable nondiscriminatory fee, charge, or assessment . . . regardless of whether that

3  reasonable fee, charge, or assessment is denominated a tax."  § 313(c)(1)(B).

4         As discussed above, the statutory language has been clear since the 1977

5  amendment to the Clean Water Act that Congress waived sovereign immunity from

6  reasonable service charges, and the reasonableness of service charges for stormwater

7  pollution programs was rarely litigated prior to the Stormwater Amendment.  In one of

8  those rare cases, the United States District Court for the Southern District of Ohio

9  concluded that the City of Cincinnati's "stormwater system charge [fell] squarely within

10  the waiver of sovereign immunity contained in" the 1977 text of the Act.  *City of*

11  *Cincinnati v. United States*, No. C1-03-731 (S.D. Ohio March 27, 2007) (order regarding

12  summary judgment at 8).

13         Despite the Act's unambiguous waiver, Congress passed the Stormwater

14  Amendment to clarify Federal responsibility to pay stormwater program charges in

15  response to Federal agencies that had ceased paying the charges, claiming that they were

16  taxes and thus beyond the scope of the Clean Water Act's waiver.  (*See* Amicus Br. Ex.

17  A, Congressional Record—House ("House Record") (Dkt. #24-1) at H8979.)  As

18

19      sewer system that manages a combination of stormwater and sanitary waste),
    including the full range of programmatic and structural costs attributable to

20  collecting stormwater, reducing pollutants in stormwater, and reducing the
    volume and rate of stormwater discharge, regardless of whether that reasonable

21  fee, charge, or assessment is denominated a tax.

22  CWA § 313(c)(1) (emphasis added).

ORDER- 13

1  explained in more detail below, the amendment's title and legislative history, as well as

2  the illustration of reasonable service charges using established criteria for assessing the

3  reasonableness of regulatory fees, indicate that the Stormwater Amendment was a

4  clarification rather than a substantive amendment.

5       "[S]ubsequent legislation declaring the intent of an earlier statute is entitled to

6  great weight in statutory construction," *Loving*, 517 U.S. at 770 (citations and quotations

7  omitted), particularly when Congress formally declares an act to be a clarification,

8  *Beverly*, 132 F.3d at 1265-66.  Here, Congress formally subtitled the Stormwater

9  Amendment as "An Act To amend the Federal Water Pollution Control Act *to clarify*

10  Federal responsibility for stormwater pollution."  Federal Responsibility to Pay for

11  Stormwater Programs, Pub. L. 111-378, 124 Stat. 4128 (2011) (emphasis added).

12       Moreover, while "the statements of one legislator made during debate may not be

13  controlling," the remarks of the sponsors of the bill "are an authoritative guide to the

14  statute's construction."  *United States v. Maciel-Alcala*, 612 F.3d 1092, 1100 (9th Cir.

15  2010) *cert. denied*, 131 S. Ct. 673 (2010) (quoting *N. Haven Bd. of Educ. v. Bell*, 456

16  U.S. 512, 526-27 (1982)).  Senator Cardin, the sponsor of the Senate version of the bill,

17  stated that it was "a bill to clarify Federal responsibility to pay . . . localities for

18  reasonable costs associated with the control and abatement" of stormwater pollution.

19  (Amicus Br. Ex. A, Congressional Record—Senate ("Senate Record") (Dkt. # 24-1) at

20  S11023.)  Representative Norton, the House sponsor of the bill, similarly stated, "[T]his

21  bill simply clarifies current law, that the Federal Government has a responsibility to pay

22  its normal and customary fees assessed by local governments for managing polluted

1   stormwater runoff from Federal properties, just as private citizens pay." (House Record

2   at H8979.)  Representative Norton noted that although § 313 already stated that "the

3   Federal Government shall be subject to, and comply with . . . [those] requirements in the

4   same manner, and to the same extent as any nongovernmental entity," the Government

5   Accounting Office had issued letters instructing agencies not to pay the fees. (*Id*.)  She

6   stated, "This bill clarifies that . . . Federal agencies must *continue* to pay their utility

7   fees." (*Id*. (emphasis added).)  While not the sponsor of the bill, Representative Eddie

8   Bernice Johnson similarly stated that § 313 already required that the Federal Government

9   pay stormwater fees, but that Congress had learned in the preceding months that agencies

10  had begun to declare that they had sovereign immunity from paying the fees. (*Id*.)  Like

11  the bill's sponsors, she stated that the bill would clarify Federal responsibility to pay

12  those fees. (*Id*.)  No one in the House or Senate voiced any contrary views when these

13  speeches were made. (*See id*.)

14       Furthermore, in establishing non-exclusive criteria for determining whether a fee

15  is a reasonable service charge, Congress appears to have used its power to "confirm what

16  the law has always meant." *Beverly*, 132 F.3d at 1265-66.  The language Congress used

17  in formulating those non-exclusive criteria reflects the standards that courts likely would

18  have applied in Clean Water Act litigation prior to the Stormwater Amendment to

19  determine whether a municipality's fee qualifies as a reasonable service charge under the

20  Act.  Section 313(c) states that reasonable service charges "include any reasonable

21  nondiscriminatory fee, charge, or assessment that is (A) based on some fair

22  approximation of the proportionate contribution of the property or facility to stormwater

1  pollution . . . and (B) used to pay or reimburse the costs associated with any stormwater

2  management program."  § 313(c).  These requirements parallel those articulated by the

3  Supreme Court for the reasonableness of regulatory taxes.  *See Massachusetts v. United*

4  *States*, 435 U.S. 444, 464 (1978).  In *Massachusetts*, the Supreme Court declared that

5  regulatory taxes are valid if they do not discriminate, are based on a fair approximation of

6  use, and are not excessive in relation to the benefit conferred.  *Id.*

7       While *Massachusetts* dealt with fees assessed by the federal government on a

8  state, the First and Second Circuits have recognized the *Massachusetts* test's factors as

9  the test for the reasonableness of regulatory charges on a government entity in general.

10  *State of Me. v. Dep't of Navy*, 973 F.2d 1007, 1013 (1st Cir. 1992) (using *Massachusetts*

11  test to determine whether regulatory charges on a government entity are permissible);

12  *Jorling v. U.S. Dept. of Energy*, 218 F.3d 96, 100-04 (2d Cir. 2000) (reasonableness of

13  regulatory charges under Resource Conservation and Recovery Act ("RCRA")

14  determined by *Massachusetts* test); *see also United States v. Manning*, 434 F. Supp. 2d

15  988, 1016 (E.D. Wash. 2006) *aff'd*, 527 F.3d 828 (9th Cir. 2008) (even if surcharge

16  qualified as regulatory charge under RCRA, would still have to meet *Massachusetts*

17  criteria).  Moreover, the *Massachusetts* test was itself merely a restatement of the test the

18  Supreme Court articulated in *Evansville-Vanderburgh Airport Authority v. Delta Airlines,*

19  *Inc.*, in which the Supreme Court applied the test's factors to a tax levied by an airport

20  authority, as authorized by the state, against airline passengers.  *Evansville-Vanderburgh*

21  *Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 716-20 (1972), *superseded by*

22  *statute as recognized in Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 368

ORDER- 16

1   (1994); *see also Nw. Airlines*, 510 U.S. at 368 ("[T]he *Evansville* formulation has been

2   used to determine 'reasonableness' in related contexts."); *Am. Trucking Ass'ns, Inc. v.*

3   *Scheiner*, 483 U.S. 266, 289-90 (1987) (applying the *Evansville* test to state tax on private

4   parties); *United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989) (applying the fair

5   approximation prong to Takings Clause analysis); *Garneau v. City of Seattle*, 147 F.3d

6   802, 815 (9th Cir. 1998) (applying the fair approximation prong to Takings Clause

7   analysis).[5]  As demonstrated by the cases cited above, the factors in the *Massachusetts*

8   test have been recognized as a test of the reasonableness of regulatory charges.

9        Moreover, prior to the Stormwater Amendment, Congress used similar factors as a

10  test of whether regulatory charges are reasonable.  In 1992, Congress clarified the

11  meaning of reasonable service charges that could be levied against the Federal

12  Government under the RCRA by adding that such charges include "any . . . other

13  nondiscriminatory charges that are assessed in connection with . . . waste regulatory"

14  programs.  42 U.S.C. § 6961; Resource Conservation and Recovery Act of 1976, Pub. L.

15  94–580, 90 Stat. 2795 (1976); Federal Facility Compliance Act of 1992, Pub. L. 102–

16  386, 106 Stat. 1505 (1992); *see also N.Y. State Dept. of Envtl. Conservation v. U.S. Dept.*

17  *of Energy*, 772 F. Supp. 91, 99 (N.D.N.Y. 1991), *supplemented*, 850 F. Supp. 132

18  _____

19      [5] At oral argument, the United States cited to the Eighth Circuit decision in *United States*
    *v. City of Columbia, Mo.*, 914 F.2d 151, 154 (8th Cir. 1990), in arguing that the *Massachusetts*

20  test should not be applied here.  The court there rejected the use of the *Massachusetts* test in
    determining "whether a charge levied by a sovereign [on the federal government] was a tax," in
    part based on the distinctions between state and federal immunity.  *United States v. City of*

21  *Columbia, Mo.*, 914 F.2d 151, 154 (8th Cir. 1990).  The issue here, however, is not whether
    reasonable service charges for stormwater programs are taxes, but the use of the *Massachusetts*

22  factors in determining the reasonableness of regulatory charges.

1  (N.D.N.Y. 1994) (applying the *Massachusetts* test to determine whether RCRA charges

2  were impermissible taxes or permissible fees).

3      The legislative history and statutory text demonstrate that even before the

4  Stormwater Amendment, the Clean Water Act waived the government's sovereign

5  immunity and was clear in the requirement that the government pay reasonable service

6  charges.  Section 313(c) merely stresses the government's existing responsibility to pay

7  stormwater system fees by setting down common, long-standing requirements for the

8  reasonableness of regulatory fees.  Accordingly, the court concludes that the Stormwater

9  Amendment was a clarification rather than a substantive amendment, and grants the

10  Cities' motion for summary judgment on this issue of law.

11      **5.  Responsibility for Fees Prior to January 4, 2011**

12      Finally, the Cities ask that the court rule that the United States is responsible for

13  the payment of the stormwater fees imposed prior to January 4, 2011.  (SJ Mot. at 12).

14  This issue raises two distinct questions: (1) whether the United States is generally

15  responsible for the payment of reasonable service charges imposed prior to January 4,

16  2011; and (2) whether it is responsible for the charges imposed by the Cities prior to

17  January 4, 2011.  The court addresses each issue in turn.

18      As discussed above, the statutory text prior to the Stormwater Amendment was

19  clear that the government had to pay reasonable service charges and that the government

20  had waived any claims to sovereign immunity for those charges.  As the court has also

21  already discussed, the legislative history demonstrates that the Stormwater Amendment

22  "confirm[ed] what the law has always meant." *Beverly*, 132 F.3d at 1265.  Indeed, the

House sponsor of the bill, Representative Norton, stated that the purpose of the bill is to tell Federal agencies that they "must *continue* to pay their utility fees." (House Record at H8979 (emphasis added).) The amendment was meant to indicate that the government had to do what it should already have been doing. According to traditional canons of statutory construction, such clarifying statements should be applied retroactively. *ABKCO*, 217 F.3d at 689-90. Thus, it is clear "in light of traditional interpretive tools" that Congress waived the Federal Government's immunity from reasonable service charges prior to January 4, 2011. *Cooper*, 132 S. Ct. at 1448 (traditional tools of statutory construction are applicable to determinations of waiver of sovereign immunity). The Court thus concludes that the United States is responsible for paying reasonable service charges imposed prior to that date.

The court's conclusion is unaffected by the United States' argument that it is immune from retroactively paying such fees because they are taxes or because they are not for services. Absent a waiver by Congress consenting to taxation by a state or local government, the United States is "not subject to any form of state taxation." *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1138 (9th Cir. 1999). The United States can "be charged reasonable fees related to the cost of government services provided," however. *Id.* at 1139.)

First, the United States attempts to avoid the retroactive effect of the Stormwater Amendment by asserting that stormwater management fees are taxes from which it had not waived immunity prior to the amendment. (Resp. to SJ Mot. at 6, 13 n.8; Compl. ¶ 24.) As discussed above, the Stormwater Amendment was merely a clarification of the

1  Clean Water Act, and as a clarification it is entitled to retroactive effect.  *See Cooper*, 132

2  S. Ct. at 1448 (traditional tools of statutory construction applicable to interpreting law

3  granting waiver); *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir.

4  1997) (one interpretive tool is Congress' power to clarify the law); *ABKCO Music, Inc. v.*

5  *LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) (amendment deemed clarifying normally

6  applied retroactively).  The Stormwater Amendment unambiguously states that the

7  government is subject to reasonable service charges "regardless of whether that

8  reasonable fee, charge, or assessment is denominated a tax."[6]  § 313(c)(2).  Accordingly,

9  even if the stormwater management fees are characterized as taxes, the clarification

10  provided by the Stormwater Amendment indicates that Congress had waived immunity to

11  such taxes even prior to the amendment.  The United States' argument is unavailing that

12  it should not have to pay reasonable service charges assessed prior to January 4, 2011,

13  because they are taxes.[7]

14  
_____

15  
    [6] Even without the clarification provided by the Stormwater Amendment, the United
16  States District Court for the Southern District of Ohio, concluded that "stormwater system
   charge[s] fall[] squarely within the waiver of sovereign immunity contained in" the 1977 text.
17  *City of Cincinnati v. United States*, No. C1-03-731 (S.D. Ohio March 27, 2007) (order regarding
   summary judgment at 8).

18      [7] Moreover, the text of the 1972 and 1977 Acts indicates that Congress consented to more
   than service fees.  Local authorities could have assessed reasonable service charges, if such
19  charges were restricted to fees for services provided to the United States, even without the
   waiver in the Clean Water Act.  *See Novato*, 181 F.3d at 1139 (government can be charged
20  reasonable fees related to cost of services provided).  Congress went further in the Clean Water
   Act, however, waiving immunity to requirements that would otherwise be unconstitutional:
21  Congress did so both by its explicit consent to local regulation in the 1972 Act—with the
   requirement that the Federal Government "be subject to, and comply with . . . local
22  requirements," 86 Stat. at 875—and with an explicit waiver in the 1977 Act—with the waiver of
   "any immunity . . . under any law or rule of law" with respect to "local requirements,

1    Second, the United States asserts that it should not have to pay the fees because

2    they are not for services—in the sense that the government never "voluntarily sought a

3    benefit or service" and that the "stormwater charges are not imposed for a service or

4    benefit provided to the United States." (Reply to U.S. Mot. at 3-5; Compl. ¶¶ 22-23; U.S.

5    Facts ¶ 2; Resp. to SJ Mot. at 11, 13 n.8.) This distinction is only important if the United

6    States has no liability because the charges are taxes rather than fees. *See Novato*, 181

7    F.3d at 1139 (United States may be charged reasonable fees for services but cannot be

8    taxed). The court has already concluded, however, that such fees are not unconstitutional

9    taxes.[8]

10    Furthermore, just as courts are not allowed to widen the scope of a waiver, they

11    are not allowed to narrow it. *Kubrick*, 444 U.S. at 117-18. Nowhere in § 313 does

12    Congress require that a government agency request a service, or even that it receive one.

13

---

14    administrative authority, and process and sanctions," Pub.L. 95-217, § 61(a). *See Envtl. Prot.*

15    *Agency v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 217 (1976) (stating "rule that federal agencies are subject to state regulation only when and to the extent Congress has clearly

16    expressed such a purpose").

17    [8] Moreover, as stated by the Federal Circuit in dicta, even an involuntary charge may be a permissible fee rather than an unconstitutional tax. *City of Cincinnati v. United States*, 153 F.3d

18    1375, 1378 (Fed. Cir. 1998). Cincinnati had requested stormwater fees based on a theory of implied contract, and it did not rely on the Clean Water Act or its waiver of immunity. *City of*

19    *Cincinnati v. United States*, 39 Fed. Cl. 271, 273 (Fed. Cl. Oct. 28, 1997). The Court of Federal Claims had ruled both that Cincinnati failed to state a claim for which relief could be granted and

20    that stormwater charges were unconstitutional taxes. *Id.* at 276. Although affirming the Court of Federal Claims on the basis of failure to state a claim, the Federal Circuit wrote that the trial

21    court had erred in ruling that a stormwater program charge was an unconstitutional tax: "There may be some instances in which a municipal assessment is involuntarily imposed but would

22    nonetheless be considered a permissible fee for services rather than an impermissible tax." 153 F.3d at 1378.

ORDER- 21

Rather, § 313 requires that government agencies comply with all "local requirements . . . and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges."  § 313(a).  Moreover, nowhere in the Clean Water Act does it require that charged services be to the government's benefit.  Rather, it directs the United States to comply with requirements "respecting the control and abatement of water pollution."  § 313(a).

The United States cites *National Cable Television Association v. United States*, 415 U.S. 336, 340 (1974), in support of its distinction between services and taxes. (Response to SJ Mot. at 13 n.8.)  In *National Cable*, the Supreme Court distinguished taxes and fees in that the latter are "incident to a voluntary act" and "bestow a benefit on the applicant not shared by other members of a society."  *Id.* at 340-41.  More recently, however, the Court found that the distinction between taxes and fees in *National Cable* did not matter when Congress clearly indicated its intention to delegate to the executive the power to impose "financial burdens, whether characterized as 'fees' or 'taxes.'" *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212, 109 S. Ct. 1726, 1734 (1989).

The text of the Clean Water Act requires compliance rather than choice with respect to local requirements, process, sanctions, and charges for stormwater management.  While those charges may more closely resemble state and local taxes from which the Federal Government has immunity absent some waiver, Congress waived immunity and required compliance by Federal agencies.  As with the non-delegation doctrine at issue in *Skinner*, the difference between taxes and fees is not relevant here as

1    Congress clearly waived its immunity to "local requirements, administrative authority,

2    and process and sanctions . . . including reasonable service charges," and required

3    compliance by the Federal Government, as Congress later clarified in the Stormwater

4    Amendment.  §§ 313(a) and (c).  The United States is therefore responsible for

5    reasonable service charges imposed prior to January 4, 2011.  Therefore, the court

6    concludes that there are no genuine issues of fact and that the Cities are entitled to

7    summary judgment as a matter of law with respect to the question whether the United

8    States is responsible for paying reasonable service charges imposed prior to January 4,

9    2011.

10           Nevertheless, to be entitled to judgment as a matter of law as to the specific

11   service charges imposed by the Cities prior to January 4, 2011, the Cities must show that

12   there is no dispute as to any material fact and that the charges satisfy the requirements of

13   § 313(c).  As discussed above, it is clear by traditional tools of statutory construction that

14   the scope of the waiver of sovereign immunity includes and—by Congress' power to

15   "confirm what the law has always meant," *Beverly*, 132 F.3d at 1265-66—has always

16   included at a minimum the fees that meet the requirements of § 313(c).  *See Cooper*, 132

17   S. Ct. at 1448 (scope of waiver must be clearly discernible in light of traditional

18   interpretive tools).  Accordingly, to be entitled to summary judgment on this issue, the

19   Cities must show that their charges meet the requirements of § 313(c), which states that

20   "reasonable service charges" include "any reasonable nondiscriminatory fee, charge, or

21   assessment that is (A) based on some fair approximation of the proportionate contribution

22

ORDER- 23

1   of the property or facility to stormwater pollution . . . and (B) used to pay or reimburse

2   the costs associated with any stormwater management program."  § 313(c).

3   　　While the Cities have submitted some evidence relevant to this issue, including

4   supplemental authority provided after oral argument, they have failed satisfy their initial

5   factual burden on summary judgment.  The court will not scour the record in an attempt

6   to piece together facts that would satisfy the Cities' burden.  *See Little v. Cox's*

7   *Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("a district court is not required to scour

8   the record [to look] for factual disputes [or] . . . to piece together appropriate

9   arguments"); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United*

10  *States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) ("'Judges are not like pigs, hunting

11  for truffles buried in briefs'").  Viewing the evidence in the light most favorable to the

12  nonmoving party, the court concludes that the Cities have not demonstrated that the fees

13  assessed prior to January 4, 2011, are reasonable service charges within the meaning of

14  § 313(c).  Accordingly, the court denies summary judgment on this issue.

15  　　Nevertheless, in order to narrow the issues for trial, the court will address three

16  arguments raised by the United States.  First, the United States argues that the Cities' rate

17  structures are discriminatory because they provide a discount to the Cities on their street

18  acreage.  (Resp. to SJ Mot. at 27; U.S. Facts ¶ 2 [sic]; Reply to U.S. Mot. at 5-6.)  In

19  § 313(a), however, Congress indicates that the relevant comparison is not to other

20  governmental bodies, but to nongovernmental entities also paying service charges.  *See*

21  *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 130 S. Ct. 1396,

22  1412 (2010) (words of a statute must be read in their context).  The Act states that the

ORDER- 24

1  Federal Government is to comply with all requirements, process, sanctions, and

2  reasonable service charges "to the same extent as *any nongovernmental entity*." § 313(a)

3  (emphasis added).  Moreover, the United States does not claim that it is the owner of the

4  types of surfaces for which the Cities and the state receive the discount—public streets

5  and highways.  (*See* Vancouver Resp. to U.S. Mot. (Dkt. # 39) at 7.)  Therefore, the

6  United States' argument that the Cities' charges violate § 313(c) because they are

7  discriminatory is unavailing.

8         The United States also argues that the Cities have not demonstrated that there is no

9  genuine dispute of material fact as to the criterion that the fees be "based on some fair

10  approximation of the proportionate contribution of the property or facility to stormwater

11  pollution."  (Resp. to SJ Mot. at 27.)  The United States argues that "fair approximation

12  cannot be assumed without proof for both Cities where Renton's and Vancouver's rate

13  structures are not consistent."  (*Id.*)  The court agrees that the Cities must each

14  demonstrate that their respective methods to assess "proportionate contribution" are a fair

15  approximation of contribution, § 313(c), but that the Cities use different methods does

16  not necessarily mean that either is not a fair approximation.[9]

17  _____

18  [9] "Renton charges BPA storm and surface water management fees that are based upon the square footage of impervious surface for plaintiff's respective parcels.  The rates charged are

19  uniform for each class of users.  *See*, RMC 8-2-3."  (Zimmerman Aff. at 3.)  Likewise for Vancouver, "[r]ates charged under VMC Chapter 14.09 are based upon square footage of

20  impervious surface.  The rates are uniform for each class of users.  VMC 14.09.060."  (Carlson Aff. ¶ 3.)  In an unpublished decision, the Fifth Circuit has recognized the use of use of square footage of impervious surfaces as a fair approximation of use.  *El Paso Apartment Ass'n v. City*

21  *of El Paso*, 415 F. App'x 574, 578 (5th Cir. 2011).  The court wrote, "Impervious surfaces, such as buildings, driveways, and sidewalks, prevent stormwater from being absorbed into the ground.

22  The resulting runoff burdens the stormwater drainage system. Therefore, the amount of

1    Finally, the United States contends that the "Cities' stormwater charges far exceed

2 any cost related to . . . nearby municipal stormwater facilities."  (Reply to U.S. Mot. at 4.)

3 Section 313(c) requires that the charges be "used to pay or reimburse the costs associated

4 with any stormwater management program . . . including the full range of programmatic

5 and structural costs attributable to" reducing stormwater pollution.  § 313(c).  It nowhere

6 states that the fees charged to each entity must be used solely for dealing with stormwater

7 pollution attributable to that entity's property or for facilities near its property.  Rather,

8 program fees may be used for the "full range of costs" associated with the program as

9 long as the charges are proportionate to an entity's contribution to stormwater pollution.

10 § 313(c).

11 **B.    The United States' Motion to Defer**

12    Rule 56(d) states that a court may defer considering a motion for summary

13 judgment when "a nonmovant shows by affidavit or declaration that, for specified

14 reasons, it cannot present facts essential to justify its opposition."[10]  Fed. R. Civ. P. 56(d).

15

16

---

17 impervious cover on a particular piece of property is directly related to that property's use of the
stormwater drainage system. Given the legitimacy of the Board's objective, we conclude that the

18 Board's use of two different methods to measure the impervious cover on the properties in the
City is rationally related to its decision to charge each property for stormwater drainage

19 services." *Id.*

20    [10] The United States' motion to defer implies that the discovery requested is not
"essential to justify its opposition." Fed. R. Civ. P. 56(d). The government states, "[S]hould the

21 Court determine that the United States' submitted evidence is not sufficient to create a genuine
dispute of material fact, then the United States moves for time to conduct discovery to obtain

22 additional evidence to oppose the Cities' motion for partial summary judgment." (U.S. Mot. at
3, 5-6; *see also* Reply to U.S. Mot. at 3.)  Either the United States must argue that the evidence it
has submitted is sufficient to survive the motion for partial summary judgment, or, for the

1   The issues for which the United States would like to defer summary judgment, however,

2   are purely legal or are moot.  The United States asks the court for additional time for

3   discovery should the court determine that there is insufficient evidence to establish a

4   genuine dispute of material fact regarding whether the Cities have provided services to

5   BPA, whether the stormwater charges are discriminatory, and whether the charges are a

6   tax.  (U.S. Mot. 2-3.)  These requests deal with purely legal questions or with questions

7   of fact relevant to the issue for which the Cities' motion for summary judgment was

8   denied.  Accordingly, the United States' motion to defer is denied in part and denied in

9   part as moot.

10                          **IV.   CONCLUSION**

11         For the reasons stated above, the court GRANTS in part and DENIES in part the

12   Cities' motion for partial summary judgment (Dkt. # 17) and DENIES in part and

13   DENIES in part as MOOT the United States' motion to defer ruling on the motion for

14   summary judgment (Dkt. # 30).

15         Dated this 25th day of May, 2012.

16

17

18                                      JAMES L. ROBART
19                                      United States District Judge

20

21

22   purposes of the Rule 56(d) motion, it must argue that it has not submitted sufficient evidence
     because it cannot.  It cannot have it both ways.